UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Court File No. 18-cr-311 (ADM/LIB) (2) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Craig Steven Jackson, Jr., | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, upon Defendant Craig Steven Jackson, Jr.'s (hereinafter "Defendant") Motion to Suppress Statements, Admissions, and Answers. [Docket No. 66]. The Court held a Motions Hearing on February 11, 2019, regarding the parties' pretrial motions after which Defendant's Motion to Suppress Statements, [Docket No. 66], was taken under advisement.[1]

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 66], be **DENIED**.

I.  **Background and Statement of Facts**

   A. **Background**

Defendant is charged with one count of conspiracy to distribute heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, as well as, one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (Indictment [Docket No. 1]).

---

[1] The Court addressed the parties' pretrial motions for discovery and production of evidence by separate Order. [Docket No. 95].

**B. Facts**

The record presently before the Court indicates that on April 12, 2018, Minnesota State Trooper, Nick Otterson, initiated a traffic stop of a black Ford Explorer Limited. (February 11, 2019, Motions Hearing, Digital Recording at 3:42–3:44). During that traffic stop, Trooper Otterson completed a K-9 sniff of the stopped vehicle which alerted to a controlled substance possibly being present inside the vehicle. (Id.). A subsequent search of that vehicle by law enforcement yielded a "large amount of suspected mixture of cocaine and heroin." (Id.).

Subsequent to the traffic stop and search by Trooper Otterson, Special Agent Daniel Skoog (hereinafter "SA Skoog") contacted Red Lake Tribal Criminal Investigator Kristopher Larson (hereinafter "CI Larson")[2] to inform him of the situation and to request his assistance in a "controlled delivery" deriving out of the traffic stop and search by Trooper Otterson. (Id.). Specifically, SA Skoog requested that CI Larson surveille the parking lot of the Walmart in Detroit Lakes where the controlled delivery was to take place. (Id.). SA Skoog informed CI Larson that the stopped vehicle was a black Ford Explorer Limited, and the suspected controlled substances was intended to be delivered to a female individual named Dawn. (Id. at 3:40–3:43).

CI Larson then began surveilling the parking lot of the Walmart in Detroit Lakes. CI Larson subsequently observed the previously stopped black Ford Explorer Limited entered the parking lot. (Id. at 3:43–3:45). After parking, the black Ford Explorer Limited was approached by a white Pontiac Grad Prix. (Id.). The two individuals in the white Pontiac Grand Prix where later identified as Defendant and co-Defendant Dawn Lee Kier. (Id. 3:44–3:47). Defendant was the driver of the Grand Prix, and co-Defendant Kier was the passenger. (Id.).

---

[2] CI Larson is a Criminal Investigator for the White Earth Police Department, and he is also a member of the Paul Bunyan Task Force, as well as, the Head Waters Safe Trails Task Force where he works along side SA Skoog. (Id. at 3:38–3:42).

CI Larson observed co-Defendant Keir exited the passenger seat of the Grad Prix and enter the rear passenger seat of the black Ford Explorer Limited. (Id.). Defendant Kier subsequently exited the Ford Explorer Limited and returned to the passenger's seat of the Grand Prix. (Id.). The Grad Prix then drove across the parking lot to park in front of the Walmart, and the vehicle's two occupants exited the vehicle. (Id. at 3:43–3:47).

CI Larson and other law enforcement officers made contact with the two individuals as they exited the Grand Prix. (Id.). Defendant was subsequently arrested. (Id.). Upon being arrested, Defendant was searched, handcuffed, and placed into a Becker County Sheriff's squad car to be transported to the Becker County Sheriff's office and jail. (Id.). A quantity of suspected heroin was found on Defendant's person. (Id.).

CI Larson testified that while he assisted in the search of Defendant's person and placing Defendant in the back of the squad car, Defendant attempted to speak to CI Larson. (Id. at 4:01–4:07). Although CI Larson could not remember the specifics of what Defendant said while being placed in the back seat of the squad car, CI Larson testified that he believed Defendant said something to the effect that "he wanted to help himself out." (Id.). CI Larson further testified the conversation was "very short" due to the fact the scene was still active with "the parking lot blocked off," and if he provided any response to Defendant's assertion, it was something to the effect of "we would sit down and talk at a later time." (Id. at 4:01–4:11). CI Larson explained that the duration of the conversation was "just long enough" to handcuff Defendant, search his person, and place him in the back seat of a squad car. (Id.).

At approximately 10:16 p.m., SA Skoog and CI Larson interviewed Defendant in the interview room of the Becker County Sheriff's office and jail. (See, Id. at 3:45–3:52). CI Larson testified that, at the time of the interview, he was dressed in "plain street clothes" with his

3

firearm concealed. (Id.). CI Larson also testified that while he did not know if SA Skoog had a firearm during the interview, neither CI Larson nor SA Skoog ever drew their firearms or displayed their firearms to Defendant. (Id. at 3:51–3:54).

CI Larson testified that Defendant, at the time of the interview, seemed to understand the questions being presented to him, responded appropriately to the questions presented to him, did not appear to be under the influence of any drugs or alcohol, appeared to understand what was going on in the situation, and never indicated that he was confused or failed to understand what was happening. (Id. at 3:54–3:59). Defendant remained handcuffed during the interview, and the entirety of the interview was audio recorded by SA Skoog. (Id. at 3:47–3:52).

SA Skoog began interviewing Defendant by verifying Defendant's name, date of birth, phone number, and address. (Gov't's Ex. 1 at 00:00–2:00).[3] SA Skoog then advised Defendant of his rights as follows:

> You have the right to remain silent. Anything you say can and will be used against you in court. You have the right to talk to a lawyer and have him present—have the lawyer present with you now or at any time during question—during questioning. If you cannot afford to hire a lawyer one will be appointed for you without cost. Do you understand each of these rights as I've explained them to you?

(Gov't's Ex. 1 at 1–4). Defendant responded "Yeah."

SA Skoog then asked Defendant, "Having these rights in mind, do you wish to talk to me right now? Are you willing to talk with us?" (Id.). Defendant again responded, "Yeah." (Id.).

During the interview, SA Skoog, CI Larson, and Defendant discussed various topics, including why Defendant had provided co-Defendant Kier with a ride, where Defendant picked

---

[3] Government's Exhibit 1 is a CD audio recording of the April 12, 2018, interview. At the Motions Hearing, the Government, without objection, offered the CD audio recording into evidence as Government's Exhibit 1. (February 11, 2019, Motions Hearing, Digital Recording at 3:57–3:59). Government's Exhibit 2 is a transcript of the CD audio recording of the April 12, 2018, interview. At the Motions Hearing, the Government, without objection, offered the transcript of the CD audio recording into evidence as Government's Exhibit 2. (February 11, 2019, Motions Hearing, Digital Recording at 3:57–3:59).

up co-Defendant Kier, where Defendant got the suspected controlled substances that was found on his person, and where he had previously obtained heroin. (Id. at 4–16). Throughout the interview, Defendant asserted that he was unaware of co-Defendant Kier's intentions, but he did receive a discounted price when purchasing heroine because he agreed to give co-Defendant Kier a ride as requested. (Id.).

On several occasions during the interview, Defendant implied that he was willing to cooperate with law enforcement and would be willing to "make a buy or whatever." (See, e.g., Id. at 8–9). CI Larson concluded the interview by asking Defendant if he would be willing to speak with law enforcement again if anything else came up to which Defendant responded affirmatively. (Id. at 14–16).

Throughout the recorded interview, SA Skoog and CI Larson can be heard maintaining a conversational tone without raising their voices to yell or threatening Defendant. Although SA Skoog and CI Larson at various times during the interview told Defendant that they did not believe Defendant was telling the complete truth, Defendant maintained a conversational tone, and he was cooperative throughout the interview. Defendant also responded appropriately to the questions presented.

## II.   Defendant's Motion to Suppress Statements, Admissions, and Answers. [Docket No. 66].

Defendant now moves the Court for an Order suppressing the statement he made to CI Larson during his arrest on April 12, 2018, as well as, an Order suppressing the statements he made during his subsequent recorded interview by SA Skoog and CI Larson. (See, Def.'s Mot. to Suppress Statements, Admissions, and Answers [Docket No. 66]).

In support of the present Motion, Defendant contends that law enforcement was required to provide him with a Miranda[4] warning before Defendant made a statement during his arrest on April 12, 2018, and that because law enforcement did not do so Defendant did not provide a valid waiver of his rights prior to making any statement during his arrest on April 12, 2018. (February 11, 2019, Motions Hearing, Digital Recording at 4:13–4:15). Therefore, Defendant argues, any statement he made during his arrest on April 12, 2018, should be suppressed. (Id.).

Defendant further contends that his statements made during his subsequent recorded interview with SA Skoog and CI Larson on April 12, 2018, should also be suppressed because portions of that recorded statement were first discussed during his arrest without his having the benefit of a Miranda warning. (Id.). According to Defendant, this somehow taints the entirety of the subsequent April 12, 2018, recorded interview. (Id.). Therefore, Defendant argues, all statements he made on April 12, 2018, should be suppressed. (Id.).

### A. Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Accordingly, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). "Interrogation under Miranda includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

elicit an incriminating response from the suspect." United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005) (quoting Rhode Island v. Innis, 466 U.S. 291, 300–01 (1980)).

A defendant is entitled to a Miranda warning prior to custodial interrogation. Miranda, 384 U.S. at 444–45. Interrogation for Miranda purposes includes "any questioning or conduct that the government officer should know is reasonably likely to elicit an incriminating response." United States v. McLaughlin, 777 F.2d 388, 390 (8th Cir. 1985). Whether an incriminating response is sought by an officer is determined "from the perspective of the suspect" and not by the officer's actual intent. United States v. Richardson, 427 F.3d 1128, 1132 (8th Cir. 2005).

A defendant may waive their rights, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444.

B. Analysis

1. Statements Made at the Scene of Defendant's Arrest

As already noted, Defendant first moves the Court for an Order suppressing the statement he made to CI Larson during his arrest on April 12, 2018. (See, Def.'s Mot. to Suppress Statements, Admissions, and Answers [Docket No. 66]). In support of that request, Defendant contends that law enforcement was required to provide him with a Miranda warning before Defendant made a statement during his arrest on April 12, 2018, and that because law enforcement did not do so, Defendant did not provide a valid waiver of his rights prior to making any statement during his arrest on April 12, 2018. (February 11, 2019, Motions Hearing, Digital Recording at 4:13–4:15). Therefore, Defendant argues, any statement he made during his arrest on April 12, 2018, should be suppressed. (Id.).

As noted above, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant

way[.]" Stansbury, 511 U.S. at 322 (quoting Miranda, 384 U.S. at 444). To be subject to suppression under Miranda, a statement must be made while in custody and in response to interrogation. United States v. McGlothen, 556 F.3d 698, 701 (8th Cir. 2009) (citing United States v. Londondio, 420 F.3d 777, 783 (8th Cir. 2005)).

Thus, a statement that is voluntary and is "not the product of police questioning or police action likely to produce an incriminating response" is admissible even when made without the benefit of a Miranda warning. Richardson, 427 F.3d at 1132; see also, United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000) (statements that are spontaneous and voluntary do not require suppression). Accordingly, "Miranda has no application to statements . . . that are voluntarily offered and not a product of either express questioning or any police practice reasonably likely to evoke an incriminating response." United States v. Griffin, 922 F.2d 1343, 1357 (8th Cir. 1990) (citations omitted). "Miranda does not protect an accused from a spontaneous admission made under circumstance not induced by the investigating officers or during a conversation not initiated by the officers." United States v. Hayes, 120 F.3d 739, 744 (8th Cir. 1997) (quoting United States v. Hawkins, 102 F.3d 973, 975 (8th Cir. 1996), cert. denied, 520 U.S. 1179 (1997)).

Therefore, regarding Defendant's statements made during his arrest, the threshold issue is whether Defendant was subject to custodial interrogation for the purposes of Miranda during his arrest on April 12, 2018. The Court finds that Defendant was not subject to an interrogation and that any statement he made to CI Larson during his arrest on April 12, 2018, was entirely voluntary and spontaneous. See, United States v. Travis, No. 14-cr-253 (DSD/SER), 2015 WL 439393, at *22 (D. Minn. Feb. 3, 2015) (finding that where the defendant was not asked any

8

questions by law enforcement the defendant was not subject to an interrogation and made spontaneous statements).

In the present case, CI Larson testified that, during the arrest of Defendant on April 12, 2018, CI Larson did not attempt to take a statement from Defendant, did not attempt to speak with Defendant, and did not pose any questions to Defendant. Rather, according to the hearing record, by way of the testimony of CI Larson, it was Defendant who, unprompted, began speaking to CI Larson.

The record presently before the Court demonstrates that CI Larson was merely assisting in the search of Defendant's person and placing Defendant into the back seat of a squad car when, upon being placed in the back seat of the squad car, Defendant, without any prompting, made a statement to the effect that "he wanted to help himself out." CI Larson only responded that the two could speak later. Notably, on the record presently before the Court, CI Larson's actions during the arrest of Defendant were "not accompanied by any threats or other coercive pressures," and his conduct during the encounter with Defendant was not designed to illicit any incriminating response from Defendant. United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005).

Because CI Larson did not ask Defendant any questions, did not apply any coercive pressures, and did not speak any words or take any actions which were reasonably likely to elicit an incriminating response Defendant was not interrogated at the time of his arrest for purposes of Miranda. See, Hawkins, 102 F.3d at 975 (holding that Miranda does not bar the government from introducing into evidence spontaneous statements made during a conversation); Hull, 419 F.3d at 767; McLaughlin, 777 F.2d at 390. Therefore, because Defendant, at the time of his arrest, voluntarily offered the statements to CI Larson in a verbal exchange initiated by

9

Defendant without any words or actions by CI Larson that were reasonably likely to elicit an incriminating response, the statement by Defendant to CI Larson was voluntary and spontaneous. See, United States v. Edwards, 563 F. Supp. 2d 977, 998 (D. Minn. 2008) (holding that the defendant's statements were spontaneous where the officer had not yet spoken to the defendant at the time the defendant made incriminating statements); United States v. Turner, 157 F.3d 552, 556 (8th Cir. 1998) ("We have repeatedly held that '[a] voluntary statement made by a suspect, not in response to interrogation, is not barred . . . and is admissible with or without the giving of Miranda warnings.'") (alteration in original); see, in accord, United States v. Barnes, 195 F.3d 1027, 1029 (8th Cir. 1999) (finding spontaneous a defendant's statement that the officer was incorrect after he had advised defendant he was going to be booked for possession of a firearm because the statement was in response to a statement of fact not the functional equivalent of interrogation).

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Statements, Admission, and Answers, [Docket No. 66], to the extent the Motion seeks suppression of the statement Defendant made to CI Larson during his arrest on April 12, 2018.

### 2. The Subsequent Interview of Defendant

Defendant next moves the Court for an Order suppressing the statements he made during his subsequent recorded interview by SA Skoog and CI Larson on April 12, 2018. (See, Def.'s Mot. to Suppress Statements, Admissions, and Answers [Docket No. 66]). In support of that request, Defendant proffers a fruit of the poisonous tree based argument.

Defendant here again contends that law enforcement was required to provide him with a Miranda warning before Defendant made a statement to CI Larson during his arrest on April 12, 2018, but law enforcement failed to do so; therefore, Defendant argues, any statements he made

during his arrest on April 12, 2018, as well as, during any later interview which built on or related to his time of arrest statements to CI Larson should also be suppressed. (February 11, 2019, Motions Hearing, Digital Recording at 4:13–4:15). According to Defendant, his later recorded statement was tainted by his earlier statement at the time of his arrest. (Id.). Therefore, Defendant argues, <u>all</u> statements he made on April 12, 2018, should be suppressed. (Id.).

The Court notes that Defendant's fruit to the poisonous tree argument lacks merits for at least two fundamental, threshold reasons. First, because the Court has already found that Defendant's statement to CI Larson during his arrest on April 12, 2018, was entirely spontaneous and permissibly obtained, the spontaneous statement Defendant made during his arrest cannot taint or make impermissible any statements later made by Defendant during his recorded interview with SA Skoog and CI Larson on April 12, 2018.

Second, Defendant's fruit of the poisonous tree argument appears to be based on a misstatement of the facts underlying the present case. Defendant ostensibly asserts that when the suspected heroin was found on Defendant during his arrest, CI Larson—without first providing Defendant with a <u>Miranda</u> warning—impermissibly asked Defendant where he obtained the heroin and the price he had paid for the heroin. (<u>See</u>, February 11, 2019, Motions Hearing, Digital Recording at 4:13–4:15). It is the allegedly constitutionally-impermissible acquisition of that statement which Defendant appears to argue taints Defendant's subsequent interview with SA Skoog and CI Larson. (<u>See</u>, <u>Id.</u>).

CI Larson's hearing testimony, however, clearly provides that he did not ask Defendant <u>any</u> questions during Defendant's arrest on April 12, 2018. Rather, it was Defendant who attempted to initiated a conversation with CI Larson at that time; an attempt, which on the record now before the Court, appears to have been unsuccessful because CI Larson only responded that

11

the two could discuss the matter at a later time. Moreover, based on the record now before the Court, the interaction between Defendant and CI Larson at the time of arrest only involved Defendant saying something to the effect that "he wanted to help himself out." There is nothing in the record to support Defendant's assertion that CI Larson specifically asked Defendant about nor that Defendant told CI Larson anything at the time of his arrest on April 12, 2018, regarding the origin of the suspected heroin found on Defendant's person or the price Defendant paid for that suspected heroin.

Although Defendant does not appear to specifically challenge the validity of the waiver of his Miranda rights at the later April 12, 2018, recorded interview with SA Skoog and CI Larson, in an abundance of caution, the undersigned will review that waiver to ensure Defendant's statement at the time of the recorded interview, were obtained in a constitutionally permissible manner.

As noted above, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury, 511 U.S. at 322 (quoting Miranda, 384 U.S. at 444). To be subject to suppression under Miranda, a statement must be made while in custody and in response to interrogation. United States v. McGlothen, 556 F.3d 698, 701 (8th Cir. 2009) (citing United States v. Londondio, 420 F.3d 777, 783 (8th Cir. 2005)). A defendant may nevertheless waive their rights, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444.

It is undisputed that SA Skoog and CI Larson's express questioning of Defendant during the recorded interview at the Becker County Sheriff's office and jail on April 12, 2018, constituted interrogation. It is also undisputed that Defendant was in custody during the April 12,

2018, recorded interview when he made the statements he now seeks to suppress. The undisputed hearing record also clearly demonstrates that Defendant was read a Miranda warning before the interview began, and that he verbally acknowledged he understood the rights warning.

Accordingly, the only issue now before the Court regarding Defendant's statements made during the April 12, 2018, recorded interview by SA Skoog and CI Larson is whether Defendant's waiver of his rights was made intelligently, knowingly, and voluntarily.

Before a statement procured through custodial interrogation can be admitted in court, the Government must demonstrate that a defendant's wavier of his rights was made intelligently, knowingly, and voluntarily. Miranda, 384 U.S. at 444, 475. The validity of a Miranda waiver requires consideration of two distinct inquiries, namely whether the waiver was voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception[,]" and whether the waiver was knowingly and intelligently made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Vinton, 631 F.3d 476, 483 (8th Cir. 2011) (internal citations omitted) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). "The government has the burden of proving the validity of the Miranda waiver by a preponderance of the evidence." United States v. Haggard, 368 F.3d 1020, 1024 (8th Cir. 2004).

1. Voluntariness

Courts assess whether a waiver of rights pursuant to Miranda was made voluntarily by considering "the conduct of law enforcement officials and the suspect's capacity to resist any pressure." United States v. Contreras, 372 F.3d 974, 978 (8th Cir. 2004). The United States Supreme Court has previously explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary,'" Colorado v. Connelly, 479 U.S. 157, 167

(1986), and the Eighth Circuit has read that holding to mean "that police coercion is a necessary prerequisite to a determination that a waiver was involuntary and not as bearing on the separate question whether the waiver was knowing and intelligent." United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (quoting United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991)).

In determining whether a waiver was made voluntarily, a court "looks at the totality of the circumstances and must determine whether the individual's will was overborne." United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002). In considering the totality of the circumstances, a court reviews whether the statement was "extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Sanchez, 614 F.3d 876, 883 (8th Cir. 2010) (internal quotation marks and citations omitted). "More specifically, [a court] consider[s], among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." Id. (citing Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004)).

In the present case, Defendant does not point to any particular factor which renders involuntary his April 12, 2018, rights waiver pursuant to Miranda. Defendant offers no specific argument that SA Skoog or CI Larson engaged in any specific coercive tactics that caused Defendant's will to be overborne during the interview. In fact, the Court's independent review of the audio recording of the April 12, 2018, interview indicates that the officers did not engage in any coercive tactics. See, United States v. Mims, 567 F. Supp. 2d 1059, 1080 (D. Minn. 2008) (holding Miranda waiver voluntary where, among other factors, interview was conducted in a reasonable, conversational tone); see also, United States v. Makes Room, 49 F.3d 410, 415 (8th

14

Cir. 1995) (concluding no coercive tactics were used where, among other things, officers made no threats or promises to the defendant).

Throughout the recorded interview, SA Skoog and CI Larson can be heard maintaining a conversational tone—even when telling Defendant that the officers believed Defendant was being less than completely truthful. And the Court's independent review of the audio recording of the April 12, 2018, interview indicates that the officers made no threats or promises to Defendant in exchange for Defendant's waiver of his rights pursuant to Miranda.

Further, the Court's review of the recording of the interview with SA Skoog and CI Larson shows that Defendant spoke willingly and non-defensively with the officers, understood what was being asked of him, responded appropriately to the question presented, and was able to resist accusatory questions. In fact, throughout the interview, Defendant made illusions to his being willing to cooperate even further with officers by participating in a "controlled buy" of narcotics. (See, e.g., Gov't's Ex. 1 at 8–9).

The interview, which lasted only seventeen minutes, was also not coercive in its duration. See, e.g., Makes Room, 49 F.3d at 415 (noting that interrogation lasting more than two hours was not coercive in duration). Finally, Defendant's repeated assertion that he did not know more than he was stating—in the face of SA Skoog and CI Larson's several declarations that they found him to be less than completely truthful—is itself some indication of Defendant's personal resolve and that his will was not overborne by the officers' conduct. See, e.g., United States v. Clausen, No. 16-cr-256 (MJD/LIB), 2017 WL 1483525, at *8 (D. Minn. Feb. 27, 2017), report and recommendation adopted, 2017 WL 1483392 (D. Minn. Apr. 25, 2017).

Based on the foregoing, and under the totality of the circumstances, the Court concludes that Defendant's waiver of his rights on April 12, 2018, was voluntary.

2. Knowing and Intelligent

Next, the Court must consider whether Defendant's waiver of his rights was knowingly and intelligently made. Vinton, 631 F.3d at 483. The evidence in the record regarding Defendant's understanding of his rights and presence of mind during the April 12, 2018, interview consists of the audio recording of the SA Skoog and CI Larson interview, as well as, the hearing testimony of CI Larson.

Defendant in fact offers no specific argument that his April 12, 2018, rights waiver pursuant to Miranda was anything other than knowingly and intelligently made.

On the present record, the Government offers sufficient evidence related to the April 12, 2018, recorded interview of Defendant by SA Skoog and CI Larson for the Court to determine that Defendant's waiver of his rights prior to that interview was knowing and intelligent.

On the record now before the Court, considering the totality of the circumstances, during the April 12, 2018, recorded interview by SA Skoog and CI Larson, Defendant fully comprehended the nature and scope of the conversation during the April 12, 2018, interview; understood the circumstances of the situation; understood the questions being asked of him; and provided contextually appropriate answers to questions presented. Defendant's coherency, understanding, and comprehension of the situation were demonstrated when he resisted SA Skoog and CI Larson's assertions that they believed Defendant was not telling them the whole truth. Defendant's demeanor during the interview remained responsive and cooperative.

Moreover, the audio recording for the April 12, 2018, interview further shows that after SA Skoog read a Miranda warning aloud, Defendant affirmatively acknowledged that he understood the Miranda warning, and that he agreed to continue to speak with SA Skoog and CI Larson. In fact, at the conclusion of the recorded interview, Defendant agreed to speak with the

officers again if anything new arose. And as previously noted, on several, unprompted occasions during the recorded April 12, 2018, interview, Defendant implied that he was willing to cooperate with law enforcement and would be willing to "make a buy or whatever." (See, e.g., Gov't's Ex. 1 at 8–9).

Furthermore, at the February 11, 2019, Motions Hearing, CI Larson offered testimony that, at the time of the recorded interview of Defendant by himself and SA Skoog, Defendant appeared responsive, cooperative, and coherent without any indication that Defendant was under the influence of any drugs or alcohol or that Defendant was failing to understand any of what was transpiring during the recorded interview on April 12, 2018. (February 11, 2019, Motions Hearing, Digital Recording at 3:49–3:59).

Therefore, under the totality of the circumstances—including the consideration of Defendant's own actions and words—the Court concludes that Defendant's waiver of his rights prior to the interview by SA Skoog and CI Larson on April 12, 2018, was both knowing and intelligent.

Thus, the Court recommends **DENYING** Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 66], to the extent the Motion seeks suppression of statements by Defendant to SA Skoog and CI Larson during the recorded interview at the Becker County jail on April 12, 2018.

### III. Conclusion

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 66], be **DENIED** in its entirety.

Dated: March 8, 2019
                                                             s/Leo I. Brisbois
                                                             Leo I. Brisbois
                                                             U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.